| | |
|---|---|
| District Court, Archuleta County, Colorado<br>46 Eaton Drive, Suite 1<br>Pagosa Springs, CO  81147<br><br>**CHRISTOPHER S. BLAS and GONE COUNTRY VENTURES, LLC, d/b/a/ SHOOTERS & SHENANIGANS**<br><br>Plaintiffs<br><br>v.<br><br>**TOWN OF PAGOSA SPRINGS,**<br><br>Defendant | DATE FILED: April 12, 2019 12:14 PM<br>FILING ID: 96DBFEE0DA1DD<br>CASE NUMBER: 2019CV30040<br><br><br><br>▲  **COURT USE ONLY**  ▲ |
| Reid Kelly, Attorney for Plaintiffs<br>The Kelly Law Firm, LLC<br>4440 North Pagosa Blvd.<br>Pagosa Springs, Colorado  81147<br>Phone:     (970) 731-3710<br>Email:     reid@kellylawcolorado.com<br>Atty. Reg. No.   15598 | Case Number:<br><br><br><br>Division          Courtroom |
| **COMPLAINT AND JURY DEMAND** ||

COME NOW the Plaintiffs, Christopher S. Blas ("Mr. Blas") and Gone Country Ventures, LLC, d/b/a Shooters & Shenanigans ("S&S"), by and through their undersigned counsel, Reid Kelly of The Kelly Law Firm, LLC, and bring this action for various relief.  In support of this Complaint, the Plaintiffs state:

## I.     PRELIMINARY ALLEGATIONS

1.     Plaintiff Mr. Blas is a resident of the Town of Pagosa Springs, Colorado with a street address of 276 South 10th Street, Pagosa Springs, Colorado 81147.  Mr. Blas is a member of Gone Country Ventures, LLC.

2.      Plaintiff S&S is a foreign limited liability company in good standing, authorized to do business in Colorado, with a street address of 5995 E. Grant Road, Suite 200, Tucson, Arizona 85712.  Gone Country Ventures, LLC owns S&S.  S&S operates its business within the Town of Pagosa Springs, with a street address of 23 Pike Drive, Pagosa Springs, Colorado 81147 and within a zone that is designated as a "mixed use corridor."

3.      Defendant Town of Pagosa Springs ("Town") is a municipal government located within Archuleta County, Colorado.

4.      Jurisdiction and venue with this Court are proper pursuant to C.R.C.P. Rule 98 because the Town's Municipal Code Section 13.5.2 authorizes the filing of a cause of action with the Archuleta County District Court if the Town Manager upholds the denial of a variance permit, which occurred in this case.

## II.      FACTUAL ALLEGATIONS

5.      Plaintiffs incorporate by reference each preceding paragraph as if fully set forth herein.

6.      S&S is a commercial establishment that operates a restaurant, bar, mini-golf, as well as other family entertainment.  It offers a venue for dances, fundraisers and special events. Each of these activities have, or have the potential, to generate significant noise volumes.

7.      S&S also offers a wide variety of live musical entertainment in the evenings.  The musicians perform in a seasonal outbuilding, which is partially enclosed.  Live music takes place in the summertime, weather permitting, generally on Wednesday through Saturday nights. S&S derives the majority of its revenue on evenings when live music is playing, as many patrons enjoy listening to and dancing to the music.  Patrons who enjoy the live music include Town police officers, as well as other prominent members of the Town.

8.      In 2018, the Town Police Department received complaints from residents who live near to S&S.  These residents live within Archuleta County, but not within the Town. Various Town police officers would then approach Mr. Blas and ask him to have the musical performers lower the volume of their playing.  On each occasion, Mr. Blas would comply.

9.      A number of county residents who lived near to S&S did not believe that the music, as heard from their respective properties, was loud, unreasonable or imposed upon them.

10.     Nonetheless, the Town police officers ultimately issued to Mr. Blas two noise disturbance tickets.  The citations were based upon various provisions of the Town's Municipal Code that state in relevant part:

a) The Town Council finds and determines that the making and creating of excessive, unnecessary or unusually loud noises within the Town limits that are prolonged, unusual or unreasonable in their time place and use are a detriment to the public health, comfort, convenience, safety and welfare of the residents of the Town and may cause damage to property or business. (Sec. 13.1.1)

b) *Excessively loud sound* means any sound that injures, disturbs or endangers the health or safety of any person with normal sensitivities. (Sec. 13.1.2)

c) *Unreasonable noise* means any sound that disturbs, injures or endangers the peace or health of another or endangers the health, safety or welfare of the community.  (Sec. 13.1.2)

d) *Plainly audible* means any sound produced by a live performance […], loudspeaker or any other mechanical or electronic sound making or sound

amplifying device, or instrument, that can be clearly heard by a person using his or her normal hearing faculties.  (Sec. 13.1.2)

e) For purposes of determining and classifying any noise as unreasonable as declared to be unlawful and prohibited by this Chapter, the following measurements may be applied; provided, however, a violation of this Chapter may occur without the following measurements being made:

   (1) Noise occurring within the jurisdiction of the Town shall be measured at a distance of at least one hundred and fifty (150) feet from a noise source located within the public right-of-way if the noise source is located on private property or property other than the public right-of-way, at least one hundred and fifty (150) feet from the property line of the property on which the noise source is located. (Sec. 13.2.1)

   (2) Noise that is plainly audible, as defined in Section 13.1.2, from a distance as set forth in this Section, shall be declared unreasonable unless otherwise provided herein. (Sec. 13.2.1)

f) The making and creating of an excessive or unusually loud noise, or a noise which is unreasonable and objectionable because it is impulsive, continuous, rhythmic, periodic or shrill within the Town as heard without measurement or heard and measured in the manner prescribed in Section 13.2.1 is hereby declared unlawful except when made under and in compliance with a permit issued pursuant to Section 13.5.1.  The time and location of the noise as well as the above mentioned characteristics of noise shall be considered in determining a violation of this Chapter.  (Sec. 13.3.1)

4

g) Any person subject to the jurisdiction of this Chapter may make an application to the Police Chief or his duly authorized representative for a permit for relief from the provisions of this Chapter on the basis of undue hardship.  In administering such application, the Police Chief or his duly authorized representative shall construe the term "undue hardship" to mean noise caused, which if prohibited, would cause undue hardship to the person responsible for the creation of the noise.  In determining whether relief should be granted in the form of a permit pursuant to this Article, the Police Chief shall consider the time of the day that the noise is created, the duration of the noise, the loudness of the noise relative to the required limits, whether the noise is temporary or continuous in nature, the extensiveness of the noise and the technical or economic feasibility of bringing such noise source into conformance with the provisions of this Chapter.  (Sec. 13.5.1)

h) The Police Chief shall consider all of the factors set forth in Section 13.5.1 and balance the interests of the applicant and those who are likely to be affected by the noise if a permit were granted.  The Police Chief shall proscribe any reasonable conditions or requirements deemed necessary to minimize adverse effects upon the community or the surrounding neighborhood, so long as such restrictions do not unreasonably restrict the activities of the applicant.  [Sec. 13.5.2 (2)]

### III.    PROCEDURAL BACKGROUND

11.     Plaintiffs incorporate by reference each preceding paragraph as if fully set forth

herein.

12.     On November 28, 2018, Mr. Blas, on behalf of S&S, submitted a Noise

Abatement Variance Permit Request to the Chief of Police, Chief Rockensock.  Mr. Blas

requested:

> To mitigate future noise complaints and provide a clear and definable
> standard for us to adhere to, we would like to request the following noise
> variance permit to allow for the following:
> 1.  Mon-Thurs music will terminate at 10:30 p.m.
> 2.  Fri-Sat music will terminate at 12:30 p.m.

13.     On November 28, 2018, Chief Rockensock issued a denial letter to Mr. Blas,

stating:

> I believe the request for this variance is inconsistent with the intent
> of Section 13.5.1 and the applicant has not provided any documentation
> the denial would create any "undue hardship" for the applicant if denied.
> Two prior incidents of alleged violations of this ordinance, which
> have yet to be adjudicated in the Municipal Court of the Town of Pagosa
> Springs, is prima facie evidence that the noise level of the live music
> has created an adverse effect on the community or the surrounding
> neighborhood.

14.     In accordance with the Town's procedure for appealing the denial of the Variance

Permit Request, Mr. Blas appealed the denial to the Town Manager, Ms. Andrea Phillips.  A

hearing was held before Manager Phillips on February 24, 2019.

15.     At the hearing, Mr. Blas appeared *pro se.*  He presented documentary evidence

and witness testimony as to the undue hardship the denial would impose upon S&S.[1]  He also

---

[1] In her ruling, the Town Manager found that Mr. Blas had not presented evidence of undue hardship upon the business.  Although this point is disputed, Mr. Blas at least attempted to present evidence of undue hardship at the hearing.

presented ample testimony, evidence and public support as to the desire to continue having live music at S&S.

16.      Mr. Blas argued that the noise level at S&S should be subject to scientific measurement, using a noise level instrument that recorded decibel levels.  He offered to install a noise level monitor at S&S in order to ensure compliance with the Town's noise level requirements—to the extent that such requirements could be objectively measure.  He referenced the analogous Archuleta County ordinance that measures noise in decibel levels, but which is not used in the Town.  In fact, police officers who testified on behalf of the Town and who had issued violations to Mr. Blas admitted that even the Town's standard of measurement contained within Section 13.2.1 was not used, but rather they subjectively determined that the noise level was "unreasonable" and therefore in violation of the municipal code.

17.      Town police officers admitted at the hearing that they had not received training in the science of noise pollution.

18.      Mr. Blas also argued at the hearing that the Town's noise ordinance was vague and subject to interpretation.

19.      At the hearing, Mr. Blas requested to further amend his variance request, with the aim of being in compliance with the Archuleta County noise ordinances, in an effort to ensure clear, measurable and objective standards that would protect both residents and businesses of the Town.

20.      On March 8, 2019, the Town Manager issued her Administrative Hearing Order. Despite Mr. Blas' multi-faceted efforts at the hearing to show how and why the Plaintiffs should be granted a variance, Manager Phillips ordered that the decision by the Chief of Police to deny

the request for a Noise Abatement Variance per Pagosa Springs Municipal Code Chapter 13

Section Five was upheld.  This decision was an abuse of discretion.

## IV.   FIRST CAUSE OF ACTION
### (42 U.S.C. § 1983-Violation of Plaintiffs' First Amendment Right to Free Speech)

21.     Plaintiffs incorporate by reference each preceding paragraph as if fully set forth

herein.

22.     The Plaintiffs were exercising their rights to free speech as guaranteed by the First

Amendment by having live music played at S&S.

23.     The Plaintiffs exercised their First Amendment rights in a reasonable manner.

Town police officers would attend and enjoy the live music performances that S&S hosted.  No

residents of the Town made complaints to the Town regarding the noise level of the various

bands that would perform at S&S.  Many residents who lived close by to S&S did not find the

noise level of the music to be unreasonable.  Each time that Town police officers asked Mr. Blas

to lower the volume of a band's performance, he would do so.

24.     Plaintiffs' First Amendment right to have live music played at S&S does not lose

constitutional protection simply because it attracted a few noise complaints from residents of

Archuleta County.

25.     The volume of the music played at S&S was also not unreasonable given the

physical location of S&S.  S&S is situated next to Highway 160, a busy highway that exposes

nearby residents to every form of urban-like commotion-passing traffic.

26.     No citation for noise violation was issued to Mr. Blas based on any objective

criteria, such as sound decibel readings.  Instead, Town police officers issued him only two

citations, and those were based on the respective officer's opinion that the music being played was too loud.

27.     If the Town had granted the Plaintiffs their Variance Permit Request, the Plaintiffs would have been freed from their concern of facing criminal penalties in the future for arbitrary and capricious enforcement of unconstitutional noise code provisions of the Town.

28.     Further, the Plaintiffs have suffered, and will continue to suffer, undue economic hardship by being denied their Variance Permit Request.  The Plaintiffs have suffered a loss of potential rental income from S&S due to the potential issuance of further noise violations based on subjective criteria of unreasonable noise levels from performing bands.  Similarly, the Plaintiffs have suffered a loss in market value for possible sale of S&S for the same reason.

29.     Denying the Plaintiffs a Variance Permit Request deprived the Plaintiffs of their rights, privileges and immunities secured by the Constitution, particularly their rights of free speech as guaranteed under the First Amendment.

30.     The Town of Pagosa Springs is liable for this deprivation because Town police officers were acting pursuant to expressly adopted official policies of the Town in issuing Mr. Blas citations for noise violations; Chief Rockensock was acting pursuant to the same policies in denying a Variance Permit Request to Plaintiffs; and the Town Manager based her decision to uphold the denial of the Variance Permit Request based upon the same Town policies.

WHEREFORE, the Plaintiffs, Christopher Blas and Gone Country Ventures, LLC, and each of them, pray for Judgment against the Defendant, the Town of Pagosa Springs, and for damages, in an amount to be determined at trial, including, but not limited to: economic losses and non-economic losses; consequential damages; pre-judgment and post-judgment interest; court costs;

expert witness fees; reasonable attorney's fees pursuant to 42 U.S.C. § 1988; and for such other

and further relief as this Court may deem just and appropriate.

## V.   SECOND CAUSE OF ACTION
(Violation of Fourteenth Amendment-Due Process)

31.     Plaintiffs incorporate by reference each preceding paragraph as if fully set forth

herein.

32.     The Town's noise code provisions, as more fully set forth above, violate the

Fourteenth Amendment because they are void for vagueness, and as applied to Plaintiffs, deny

them due process of law as guaranteed by the Constitution.

33.     The noise code provisions, particularly Section 13.2.1, impermissibly delegate

basic policy matters of the Town to its policemen on an ad hoc and subjective basis and lend

themselves to arbitrary and discriminatory enforcement.  The noise code provisions allow police

officers, in their subjective opinions, to determine that a noise violation occurred, which in fact

happened in each instance that Mr. Blas was issued a noise code violation.

34.     As written and as applied to the Plaintiffs, the Town's noise code provisions lead

citizens, such as the Plaintiffs, to steer far wider of the unlawful zone than if the boundaries of

the forbidden areas were clearly marked.

35.     The uncertainty resulting from the vagueness of the Town's noise code provisions

has denied the Plaintiffs their right to due process of law and has caused them economic harm.


WHEREFORE, the Plaintiffs, Christopher Blas and Gone Country Ventures, LLC, and each of

them, pray for Judgment against the Defendant, the Town of Pagosa Springs, and for damages, in

an amount to be determined at trial, including, but not limited to: economic losses and non-economic losses; consequential damages; pre-judgment and post-judgment interest; court costs; expert witness fees; reasonable attorney's fees pursuant to 42 U.S.C. § 1988; and for such other and further relief as this Court may deem just and appropriate.

## VI.   THIRD CAUSE OF ACTION
(Violation of Fourteenth Amendment-Equal Protection)

36.   Plaintiffs incorporate by reference each preceding paragraph as if fully set forth herein.

37.   The Town has an unwritten policy whereby special events concerts or charitable events concerts are entitled to obtain a Variance Permit Request that allows these events to exceed the noise level restrictions that have been placed on S&S's musical events.

38.   Allowing certain musical events to obtain a Variance Permit Request, but not allowing Plaintiffs to obtain one, deprives the Plaintiffs of equal protection of the laws as guaranteed by the Constitution and has caused them economic harm.

WHEREFORE, the Plaintiffs, Christopher Blas and Gone Country Ventures, LLC, and each of them, pray for Judgment against the Defendant, the Town of Pagosa Springs, and for damages, in an amount to be determined at trial, including, but not limited to: economic losses and non-economic losses; consequential damages; pre-judgment and post-judgment interest; court costs; expert witness fees; reasonable attorney's fees pursuant to 42 U.S.C. § 1988; and for such other and further relief as this Court may deem just and appropriate.

11

## VII.   FOURTH CAUSE OF ACTION
### (42 U.S.C. § 1983-Declaratory and Injunctive Relief-Expedited)

39.     Plaintiffs incorporate by reference each preceding paragraph as if fully set forth herein.

40.     Because the Town's noise code provisions are facially void and infringe upon Plaintiffs' constitutional rights as applied, this Court should declare them to be unconstitutional.

41.     Because the Town's noise code provisions are unconstitutional, this Court should enjoin their enforcement in general, and in particular with regard to Plaintiffs and the performance of live concerts at S&S.

42.     Plaintiffs' ability to meet its financial obligations to continue operations of S&S depend upon the lease terms it is able to obtain from the current lessee.  Those lease terms, in turn, hinge upon S&S's ability to host live performances in its high season, without the concern of potential violations of the Town's noise code provisions.  The high tourist season for S&S is just starting for the summer of 2019.  Therefore, Plaintiffs request that this Court hear and rule upon the validity or invalidity of the Town's noise code provisions in an expedited fashion.

WHEREFORE, the Plaintiffs, Christopher Blas and Gone Country Ventures, LLC, and each of them, pray that this Court, on an expedited basis, declare the noise code provisions as set forth in this Complaint to be unconstitutional and enjoin their enforcement in general and in particular with regard to Plaintiffs and the performance of live music at Shooters & Shenanigans.


PLAINTIFFS DEMAND A TRIAL BY JURY ON ALL CLAIMS FOR RELIEF THAT MAY
BE HEARD BY A JURY


Respectfully submitted this 12th of April, 2019

*s/ Reid B. Kelly (signature on file)*
Reid B. Kelly
The Kelly Law Firm LLC
4440 North Pagosa Blvd
Pagosa Springs, CO 81147
(970) 731-3710
*Attorney for Plaintiffs*

Plaintiffs' addresses:

Christopher Blas:
276 S. 10th Street
Pagosa Springs, CO 81147

Gone Country Ventures, LLC:
5995 E. Grant Road, Suite 200
Tucson, AZ 85712